De LAURENTIIS, Anselmo De Laurenti-
is, Fiorinda, his wife, Appellants,

v.

Honorable Alexander M. HAIG, Jr.,
Secretary of State.

No. 82–1003.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
Aug. 3, 1982.

Decided Aug. 12, 1982.

James J. Orlow, Lawrence H. Rudnick,
Wasserman, Orlow, Ginsberg & Rubin, Phil-
adelphia, Pa., for appellants.

Peter F. Vaira, U. S. Atty., Walter S.
Batty, Jr., Asst. U. S. Atty., Chief of Ap-
peals, Susan Dein Bricklin, Asst. U. S.
Atty., Philadelphia, Pa., for appellees.

Before ALDISERT and WEIS, Circuit
Judges, and RE, Chief Judge.*

### OPINION OF THE COURT
PER CURIAM.

The question for decision is whether the
Freedom of Information Act (FOIA), 5
U.S.C. § 552 (1976), exempts from its gen-
eral mandate of disclosure certain United
States Department of State documents per-
taining to the denial of an immigrant visa
request. Appellants are Anselmo DeLau-
rentiis, an Italian citizen currently residing
in Italy, and his wife, Fiorinda, a native-
born United States citizen currently resid-
ing in Philadelphia. The district court
granted summary judgment in favor of the
Secretary of State, determining that
§ 222(f) of the Immigration and Nationali-
ty Act, 8 U.S.C. § 1202(f), qualifies as an
existing statute under exemption 3 of
FOIA, 5 U.S.C. § 552(b)(3).

Exemption 3 of the Act provides:

(b) This section does not apply to matters
that are—

. . . .

(3) specifically exempted from disclo-
sure by statute (other than § 552b of
this title), provided that such statute
(A) requires that the matters be with-

---

* Honorable Edward D. Re, Chief Judge, of the
United States Court of International Trade, sit-

ting by designation.

held from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of information to be withheld.

The documents at issue pertain to the issuance or refusal of a visa. Release of these documents is regulated by § 222(f) of the Immigration and Nationality Act, 8 U.S.C. § 1202(f):

> The records of the Department of State and diplomatic and consular offices of the United States pertaining to the issuance or refusal of visas or permits to enter the United States shall be considered confidential and shall be used only for the formulation, amendment, administration, or enforcement of the immigration, nationality, and other laws of the United States, except that in the discretion of the Secretary of State certified copies of such records may be made available to a court which certifies that the information contained in such record is needed by the court in the interest of the ends of justice in a case pending before the court.

We affirm the grant of summary judgment in favor of the Secretary of State for the reasons set forth by then District Judge Edward R. Becker. We adopt as our own the following portions of Judge Becker's opinion:[1]

"[W]e believe that § 222(f) of the Immigration and Nationality Act squarely falls under exemption 3(B) of FOIA. We reach this conclusion: (1) from the plain language of § 222(f); (2) from an analysis of the policy basis for the statutes and the statutory amendments which constitute exemption 3(B); and (3) the legislative history of exemption 3(B) itself.

A. *The Plain Language and Policy of Exemption 3(B)*

"We start with the plain language of § 222(f) and conclude that § 222(f) qualifies on its faces as an exempting statute under exemption 3(B). This exemption provides that a statute establishing 'particular criteria for withholding' or referring to 'particular types of information to be withheld' is an exempting statute under FOIA. While § 222(f) does not 'establish particular criteria for withholding,' it does refer 'to particular types of information to be withheld.' Section 222(f) provides that 'records of the Department of State and diplomatic and consular offices of the United States pertaining to the issuance or refusal of visas or permits to enter the United States shall be considered confidential ....' This category of information is sufficiently delimited to fit within the statutory language.

"Exemption 3 resulted from Congress' dissatisfaction with the broad administrative discretion in the withholding of documents under FOIA permitted by the Supreme Court's decision in *Administrator, Federal Aviation Administration v. Robertson*, 422 U.S. 255, 95 S.Ct. 2140, 45 L.Ed.2d 164 (1975) ['*FAA Administrator*']. In that case, the Court ruled that a statute permitting an administrative agency to withhold information upon a written objection when, in the judgment of the agency, 'a disclosure of such information would adversely affect the interests of such person and is not required in the interest of the public,' *id.* 259 n.4, 95 S.Ct. at 2144 n.4, qualified as an exempting statute under FOIA. Congress' efforts to curtail such broad administrative discretion in withholding agency records produced the present exemption 3. *See generally American Jewish Cong. v. Kreps*, 574 F.2d 624, 627–28 (D.C.Cir.1978). Section 222(f) does not authorize the unfettered discretion which Congress found objectionable in *FAA Administrator*. In that case, the statute permitted withholding of 'information contained in any application, report, or document' filed pursuant to the full panoply of laws establishing and governing the federal aviation program or otherwise obtained by the Civil Aeronautics Board or the FAA Administrator. Here, § 222(f) limits the Secretary's withholding authority to only those documents pertaining to the issuance or refusal of entry visas. The potential for widespread administrative

1. *DeLaurentiis v. Haig*, 528 F.Supp. 601 (E.D. Pa.1981) (footnotes renumbered).

discretion over the withholding of a vast category of documents is simply lacking in § 222(f).

"We find precedent for our conclusion that § 222(f) qualifies as an exemption 3(B) statute in *Irons & Sears v. Dann*, 606 F.2d 1215 (D.C.Cir.1979), where a similarly formulated statute governing the handling of patent applications was found by the United States Court of Appeals for the District of Columbia to qualify as a 3(B) exempting statute. In *Irons & Sears v. Dann*, appellants sought access under FOIA to all decisions of the Patent and Trademark Office disposing of requests by would-be patentees for a filing date earlier than the one initially assigned to their applications. The Patent and Trademark Office refused to provide such information, arguing that the information requested was covered by a 3(B) exempting statute, § 122 of the Patent Act, 35 U.S.C. § 122 (1976), which provides:

> Applications for patents shall be kept in confidence by the Patent and Trademark Office and no information concerning the same given without authority of the applicant or owner unless necessary to carry out the provisions of any Act of Congress or in such special circumstances as may be determined by the Commissioner.

In finding that § 122 of the Patent Act was a withholding statute under exemption 3(B),[2] the Court noted:

> [T]he mere presence of some residual administrative discretion does not take § 122 out of exemption 3. It is quite clear that the requirements set forth in that exemption are phrased in the disjunctive, and it is therefore sufficient if either prong of the proviso is satisfied. *We believe that § 122 does satisfy the second prong because it refers to particular types of matters to be withheld—namely, patent applications and information concerning them.*

*Id.* 1220–21 (emphasis supplied footnote omitted).

"*Irons & Sears* shows that a statute providing that the withholding of applications and information concerning them, even though such withholding may be permissive, may be precise enough to qualify as a statute referring to particular types of matters to be withheld as to qualify under exemption 3(B). Section 222(f) of the Immigration and Nationality Act is analogous to § 122 of the Patent Act in this respect. Section 222(f) does not allow the Secretary of State to withhold a limitless number of documents in his discretion. The statute only empowers him to withhold records pertaining to the issuance or refusals of visas or permits to enter the United States. The statute is therefore an exempting statute under exemption 3(B) because it 'refers to particular types of matters to be withheld.'

"Two other courts have found § 222(f) to be an exempting statute under exemption 3. In *Church of Scientology of California v. Department of State*, 493 F.Supp. 418, 423 (D.D.C.1980), Judge Robinson, interpreting the statutes on their face, found § 222(f) to be a withholding statute under exemption 3. Regrettably, Judge Robinson did not explain whether § 222(f) fell under clause A or the first or second parts of clause B of exemption 3. In *Serbian Eastern Orthodox Diocese [v. Department of State*, no. 77–1413 (D.D.C., Dec. 30, 1977) ], Judge Pratt noted that the legislative history to exemption 3(B) made explicit reference to § 222(f) as an example of a qualifying statute, and concluded that 'the provisions for limited disclosure satisfied the requirement of exemption 3(B) that the statute establish particular criteria for withholding or refer to particular types of matter to be withheld.' *Id.,* [slip op. at 4]. We are in agreement with Judge Pratt, for the legislative history does, indeed, indicate that Congress

---

**2.** The court had first considered whether § 122 of the Patent Act fell under the first part of the proviso in exemption 3, but found that the Patent Act was not a statute requiring non-disclosure "in a manner as to leave no discretion on the issue," because it permitted the commis-sioner to release information concerning patent applications when he found that there existed the appropriate "special circumstances." 606 F.2d at 1220. *Contra, Lee Pharmaceuticals [v. Kreps*, 577 F.2d 610 (9th Cir. 1978) ].

intended § 222(f) to qualify as an exempting statute under exemption 3(B). Before developing this point, however, we must detail the general legislative history of the present exemption 3(B).

B. *The Legislative History of Exemption 3(B)*

"Exemption 3(B) originated in a section of H.R. 11656, which was introduced in 1976 in response to *FAA Administrator.* In addition to containing provisions governing the openness of government meetings, H.R. 11656 provided that information may be withheld by a government agency if the information was 'required to be withheld from the public by a statute establishing particular types of information.' *Sourcebook [:Legislative History, Text and Other Documents, Government in the Sunshine Act]* 474. That bill was referred to the House Committee on Government Operations, which reported it without any change in this language and then referred it to the House Judiciary Committee. The Judiciary Committee reported H.R. 11656, after amending it so that information could be withheld when it was 'required *or permitted* to be withheld from the public by any statute establishing particular criteria or referring to particular types of information.' *Sourcebook, supra,* at 511 (emphasis supplied). The Judiciary Committee report accompanying the bill contained a significant footnote which indicated that § 222 of the Immigration and Nationality Act was intended to be included as an exemption 3 withholding statute.[3]

"The Judiciary Committee then committed H.R. 11656 to the Committee of the Whole House where the entire bill was subjected to an amendment in the nature of a substitute submitted by Representative Flowers. The Flowers amendment, however, merely incorporated the 3(B) language in the bill reported by the Judiciary Committee.[4] *Sourcebook, supra,* at 655.

"Representative McCloskey then submitted an amendment to the Flowers amendment, *see* n.[4] *supra,* which read: information may be withheld when it is 'specifically exempted by statute . . . provided that such statute (A) requires that the matters be withheld from the public, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.' *Sourcebook, supra,* at 689. The McCloskey amendment was passed by the House; with only minor mod-

**3.** House Judiciary Committee Report on H.R. 11656, H.R.Rep. 94–880, Part II, 94th Cong., 2d Sess. 14–15 (April 8, 1976), *reprinted in* 3 [1976] U.S.Code Cong. & Ad.News 2224–25; *Sourcebook, supra,* at 565:

CLARIFICATION CONCERNING EXEMPTIONS

The committee considered the provisions of the exemption provided in subsection (c)(3) of § 552b concerning the disclosure of information required to be withheld from the public by any statute establishing particular criteria or referring to particular types of information. This exemption was discussed at page 9 of the report of the Committee on Government Operations, which pointed out that, under the original language of this bill, a statute that permits withholding rather than actually requiring it would not come within the exception provided in the paragraph. While the committee agrees that the language concerning criteria of types of information should be retained, it was felt that limiting the exemption to information required to be withheld by statute would be too restrictive. Rather, the exemption should extend to those statutes which require or permit information to be withheld from the pub-

lic where the statute establishes criteria or refers to particular types of information.

At this point the Committee Report appended a footnote referring to § 222(f) of the Immigration and Nationality Act. The footnote reads as follows:

This will clarify the fact that statutes such as 50 U.S.C. 403(d)(3), concerning security information, and *8 U.S.C. 222, concerning confidential records of the State Department concerning visa and related matters, are included.* [Emphasis added.]

**4.** Both parties' briefs exhibit some confusion on this point, for they treat the Flowers amendment as a completely new attempt to put the Judiciary Committee Report into statutory form. To the contrary, insofar as his amendment pertained to exemption 3(B), Representative Flowers merely incorporated the bill hammered out in the Judiciary Committee. Nevertheless, so that our opinion dovetails with the parties' arguments, we will continue to refer to the bill produced by the Judiciary Committee and adopted by Representative Flowers as "the Flowers amendment."

ification, the McCloskey amendment is the current exemption 3(A) and (B).[5]

"The Judiciary Committee Report makes crystal clear the Congressional intention to place § 222(f) within the ambit of exemption 3(B). Even though exemption 3(B) was subject to reworking after it left the House Judiciary Committee, we are certain that if § 222(f) were an exempting statute contemplated by the Flowers amendment, then it surely would be covered by the present exemption 3 which expanded the definition of exempting statutes. Thus, the footnote reference to § 222(f) of the Immigration and Nationality Act in the House Judiciary Committee Report certainly survived the ensuing legislative process of transforming the Committee report into law.

"Plaintiffs, however, contend that the sequence of amendment by which H.R. 11656 evolved into law nullified the value of the House Judiciary Committee Report as a guide to Congressional intent. Plaintiffs point out that the words 'or permitted,' which were contained in the Flowers proposal, did not survive the McCloskey amendment. Representative McCloskey eliminated these words because he felt that by adding them 'the new language, in ef-

fect broadened the exemption to allow an administrator under a permissive secrecy statute to keep information secret, unless the statute laid out specific criteria.' *Sourcebook, supra,* at 690. Plaintiffs argue that this shows that the McCloskey amendment was designed to cut back on the Flowers amendment, which swept too far because it covered permissive as well as mandatory withholding statutes. Plaintiffs further argue that § 222(f) was one of the permissive statutes covered by the Flowers proposal which the McCloskey amendment was designed to exclude as a withholding statute.

"Plaintiffs' interpretation rests upon a skewed reading of the legislative history and the statutes themselves. While the legislative history does not clarify the reason for Representative McCloskey's trouble with the words 'or permitted,' we are certain that the McCloskey amendment did not eliminate all permissive statutes from the ambit of exemption 3(B). For permissive withholding statutes, establishing particular criteria for withholding or referring to particular types of information to be withheld (the same as those proposed in the Flowers amendment), would continue to qualify under the McCloskey amendment's exemption 3(B).[6] Indeed, in order to give effect to

---

5. Exemption 3(B) was enacted as part of the Government in the Sunshine Act, Pub.L.No.94–409, § 5(b), 90 Stat. 1247 (1976). The Senate version of this bill, S. 5, contained no provision amending the third exemption set forth in 5 U.S.C. § 552(b). It was the House of Representatives' amendment to S. 5 which contained the McCloskey amendment. The Conference Committee adopted the House amendment almost verbatim. *See* Joint Explanatory Statement of the Committee of Conference on P₁L. 94–409, 94th Cong., 2d Sess. [25, *reprinted in*] 3 [1976] *U.S.Code Cong. & Ad.News,* 2260–61. The only difference between the McCloskey amendment and the final statute is found in the addition of the words "in such a manner as to leave no discretion on the issue" following the words "requires that the matters be withheld from the public," which were contained in the McCloskey amendment.

6. The correctness of this interpretation may be seen from one of the exchanges between Representatives McCloskey and Fascell:

MR. FASCELL. I gather that what the gentlemen [sic] is saying is that the qualifying clauses [in the Flowers proposal], to wit,

establishing particular criteria or referring to particular types of information so qualify the exemption under the Freedom of Information Act or mandatory statute to the extent that the gentleman or somebody feels that even though we have a statute which authorizes an agency to withhold information, the language would be such that it would be required to release the information. That is the way I understand the gentlemen's [sic] argument.

Therefore, he changes this around through the present amendment so that the qualifying amendment only applies to permissive statutes, those statutes which provide permission for the administrator: is that correct? It would be required that there be particular criteria or particular types of information, but that it would not apply to mandatory statutes; is that correct?

MR. McCLOSKEY. That is correct.

In other words, we went too far in requiring all mandatory statutes of secrecy to be made subject to the Freedom of Information Act. We are pulling back from that requirement that all information required now to be secret by one law is to be made available

plaintiffs' interpretation, we would have to read exemption 3 as exclusive of any permissive withholding statute; *i.e.* clause (B) of exemption 3 would not apply to permissive withholding statutes, but only to mandatory withholding statutes which establish 'particular criteria for withholding or refer to particular types of information to be withheld.' This, however, would render clause (B) a nullity, for the specific types of mandatory withholding statutes covered by clause (B) are already covered by the more general clause (A).

"The only sensible reading of exemption 3, therefore, is that clause (A) refers to mandatory withholding statutes, and clause (B) refers to particular types of permissive withholding statutes, which, if they meet the criteria required by clause (B), qualify as exempting statutes under FOIA. *See Founding Church of Scientology of Washington, D.C., Inc. v. National Security Agency*, 610 F.2d 824, 827 (D.C.Cir.1979); *American Jewish Cong., supra*, at 628 ("Subsection (B) does leave room for administrative discretion in two carefully defined situations...."). Plaintiffs' interpretation also is inconsistent with several opinions holding statutes providing some administrative discretion to be qualified under exemption 3(B). *See, e.g., Irons & Sears v. Dann, supra.*

"The Flowers amendment would have required both mandatory and permissive withholding statutes to establish particular criteria or refer to particular types of information in order to qualify as an exempting statute. The effect of the McCloskey amendment was to permit withholding of agency records under a mandatory withholding statute as long as the federal agency had no discretion on the issue. Only permissive withholding statutes were required to establish particular criteria for withholding or refer to particular types of information to be withheld in order to qualify as an exempting statute. In Representative McCloskey's words:

> under this new law. We are pulling back from the first part of the section.

What I have done, essentially, in this amendment is to merely divide the two situations. If a statute, such as the Census Act, requires the Census Administrator to keep all information secret, it will not be subject to disclosure. On the other hand, if the statute merely permits the FAA Administrator to exercise discretion as to whether or not information shall be made public, *without specific criteria*, as to how he shall exercise that discretion, it must be released unless the Freedom of Information Act provisions permit it to be withheld.

*Sourcebook, supra,* at 690 (emphasis supplied). *See also id.* [at] 690 (comments of Rep. McCloskey); 691 (comments of Rep. *Fascel*); 693–95 (comments of Rep. McCloskey)."

The judgment of the district court will be affirmed.

*Sourcebook, supra,* at 694.