**LAM LEK CHONG, Appellant,**

v.

**UNITED STATES DRUG ENFORCEMENT ADMINISTRATION, Appellee.**

No. 89–5159.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 11, 1990.

Decided April 9, 1991.

William F. Fox, Jr. (appointed by the Court) as amicus curiae on behalf of appellant urging that this case be remanded. Lam Lek Chong, pro se, also entered an appearance for appellant.

Thomas J. McIntyre, Asst. U.S. Atty., Dept. of Justice with whom Jay B. Stephens, U.S. Atty., John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., Dept. of Justice, were on the brief for appellee.

Before WALD, EDWARDS and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge EDWARDS.

EDWARDS, Circuit Judge:

This case involves information obtained by wiretap pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III").[1] Mr. Lam Lek Chong brought an action under the Freedom of Information Act ("FOIA") seeking access to certain transcripts of electronically intercepted communications in the possession of the United States Drug Enforcement Administration ("DEA" or the "agency"). The District Court granted summary judgment for the DEA, holding that the product of Title III surveillance is immune from disclosure under Exemption 3 of the FOIA. *See Lam v. DEA*, Civ. Action No.

---

1. 18 U.S.C. § 2510 *et seq.* (1988).

85–3726, 1988 WL 26083 (D.D.C. Mar. 14, 1988), *reprinted in* Appendix ("App.") 120. That exemption allows agencies to withhold records that are "specifically exempted from disclosure by statute" where the relevant statute satisfies one of two limiting conditions.[2] On appeal, Mr. Lam challenges the District Court determination that Title III qualifies as an exempting statute under Exemption 3. Mr. Lam also objects to the District Court's failure to review *in camera* additional documents withheld by the DEA under other FOIA exemptions.

We find that material obtained under Title III falls within the scope of Exemption 3. Because Title III identifies "intercepted communications" as "particular types of matters to be withheld" within the meaning of Exemption 3(B), it constitutes a valid statutory basis for nondisclosure. Thus, the District Court properly sustained the DEA's claimed exemption for wiretap transcripts. We also find that the District Court acted well within its discretion in finding it unnecessary to conduct *in camera* review of records withheld by the agency under alternative exemptions. Accordingly, we affirm the District Court judgment in its entirety.

## I. BACKGROUND

In July 1975, Mr. Lam was convicted of a criminal offense in the state of New York. During the course of his trial and the ensuing appellate proceedings, he became aware that the DEA was in possession of documents and audio recordings relating to him that were neither introduced at trial nor made available to his defense attorneys. *See* Complaint, *reprinted in* App. 2. This case arises from Mr. Lam's efforts to obtain the materials in question under the FOIA.

Mr. Lam submitted his first FOIA request to the DEA in August 1978, seeking copies of all records pertaining to him in the Washington office. As a result of this initial request, 281 full or partial pages of material were released to Mr. Lam. A subsequent request, focusing on the disclosure of undercover transcripts or recordings, resulted in the release of an additional 545 full or partial pages. *See Lam,* mem. op. at 2–4, *reprinted in* App. 122–24.

In responding to the two requests, the DEA withheld approximately 190 full pages of material, and excised further information from a number of the documents released. In addition to Exemption 3, the agency invoked FOIA Exemptions 2, 5 and 7(D), (E) and (F)[3] in support of its decision to withhold. *See id.* at 1, *reprinted in* App. 121. The Department of Justice Office of Information and Privacy denied Mr. Lam's subsequent administrative appeal and affirmed the DEA withholdings.

Mr. Lam filed a FOIA action in the District Court in November 1985. The DEA responded with a motion for summary judgment, accompanied by an itemized index of withheld material and the affidavit of a DEA Freedom of Information Specialist. *See Lam,* mem. op. at 4, *reprinted in* App. 124. Apparently dissatisfied with the DEA's 1,000–page index, Mr. Lam moved for production of a more complete index and then requested that the District Court conduct *in camera* review of the withheld material before ruling on the claimed FOIA exemptions. *See id.* at 4–5, *reprinted in* App. 124–25; Brief of Appellant at 4. The DEA filed a supplemental affidavit with its opposition to Mr. Lam's motion. *See Lam,* mem. op. at 4–5, *reprinted in* J.A. 124–25.

The District Court granted summary judgment for the DEA on March 14, 1988. The trial court first sustained the adequacy of the DEA withholding index and accom-

---

**2.** The relevant statutory provision reads as follows:

 (b) This section does not apply to matters that are—

  (3) specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld....

5 U.S.C. § 552(b)(3) (1988).

**3.** 5 U.S.C. § 552(b)(2), (5), (7)(D)–(F).

panying affidavits, ruling *in camera* review unnecessary. *Lam,* mem. op. at 5–6, *reprinted in* App. 125–26. The District Court then proceeded to approve each of the FOIA exemptions invoked by the agency. In relevant part, it held that transcripts of electronic interceptions are "specifically exempted from disclosure" by Title III and hence protected from disclosure under Exemption 3. *Id.* at 12–13, *reprinted in* App. 132–33. The District Court denied Mr. Lam's subsequent motion to alter or amend its earlier decision, *see Lam v. DEA,* Civ. Action No. 85–3726 (D.D.C. Apr. 19, 1989), *reprinted in* App. 152, and this appeal ensued.

## II. ANALYSIS

### A. *Title III*

FOIA Exemption 3 permits agencies to withhold material that is "specifically exempted from disclosure by statute" provided that the statute invoked either "(A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). Because this case turns in critical part on the interaction between Title III and FOIA Exemption 3, we begin our analysis with an examination of Title III itself.

■ In enacting Title III, Congress sought to regulate comprehensively both the use of electronic surveillance as an investigative tool and the disclosure of materials obtained through such surveillance. *See Gelbard v. United States,* 408 U.S. 41, 46, 92 S.Ct. 2357, 2360, 33 L.Ed.2d 179 (1972). The purpose of the statute is to control the conditions under which interception will be permitted in order to safeguard the privacy of wire and oral communications. *See id.* at 48, 92 S.Ct. at 2361 (quoting S.Rep. No. 1097, 90th Cong., 2d Sess. 66 (1968)). Animating the whole of Title III is "an overriding congressional concern" with the protection of individual privacy. *Id.*

Title III safeguards privacy in the first instance by significantly restricting the initiation of electronic surveillance. Surveillance techniques are authorized only in the investigation of specified serious offenses. *See* 18 U.S.C. § 2516(1) (1988). All surveillance is subject to prior judicial approval, issued in accordance with detailed application procedures and on a showing and finding of probable cause. *See* 18 U.S.C. § 2518 (1988). Moreover, the government may not resort to electronic surveillance unless normal investigative methods are demonstrably infeasible. *See* 18 U.S.C. § 2518(3)(c).

Congressional sensitivity to privacy rights is perhaps most evidently reflected in Title III's strictly limited disclosure provisions. Apart from two instances in which judges authorizing interception may, at their discretion, release intercepted material to parties overheard, *see* 18 U.S.C. § 2518(8)(d), (10)(a), use and disclosure is governed by section 2517 of the statute. Section 2517 permits disclosure of intercepted communications in three circumstances only:

(1) Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire, oral, or electronic communication ... may disclose such contents to another investigative or law enforcement officer to the extent that such disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure.

(2) Any investigative or law enforcement officer ... may use such contents to the extent such use is appropriate to the proper performance of his official duties.

(3) Any person who has received, by any means authorized by this chapter, any information concerning a wire, oral, or electronic communication ... may disclose the contents ... while giving testimony under oath....

18 U.S.C. § 2517(1)–(3) (1988). Moreover, Title III explicitly authorizes the recovery of civil damages by persons whose communications are disclosed in violation of the

statute. 18 U.S.C. § 2520 (1988). Taken together, these provisions represent a comprehensive statutory scheme dedicated to preserving personal privacy by sharply limiting the circumstances under which surveillance may be undertaken and its fruits disclosed.

## B. *Exemption 3*

█ It is undisputed that intercepted communications of the sort at issue in this case are "specifically exempted from disclosure" by Title III as contemplated by the threshold provision of Exemption 3. *See* note 2 *supra*. *Cf. American Friends Serv. Comm. v. Webster*, 720 F.2d 29, 72–73 (D.C.Cir.1983) (Title III materials are "[r]ecords, the use of which is restricted by law" under exception to records inspection statute). The DEA does not claim that subsection (A) of Exemption 3 is applicable in this case. *See* note 2 *supra*. Thus, the parties' dispute here focuses on the question whether Title III satisfies either of the two limiting conditions of Exemption 3 subsection (B); that is, whether Title III "establishes particular criteria for withholding" *or* "refers to particular types of matters to be withheld." *See* note 2 *supra*.

We find that Title III falls squarely within the scope of subsection (B)'s second prong, as a statute referring to *"particular types of matters to be withheld."* On its face, Title III clearly identifies intercepted communications as the subject of its disclosure limitations. *See* 18 U.S.C. § 2517 ("Authorization for disclosure and use of intercepted wire, oral, or electronic communications"). And Title III's specification of the type of matter to be withheld is at least as narrow and well-defined as others to which we have applied subsection (B)'s second prong. *See, e.g., Mudge Rose Guthrie Alexander & Ferdon v. ITC*, 846 F.2d 1527, 1529–31 (D.C.Cir.1988) (Tariff Act provision for nondisclosure of "proprietary information" qualifies under second prong of subsection (B) as Exemption 3 withholding statute); *Medina–Hincapie v. Department of State*, 700 F.2d 737, 742 (D.C.Cir.1983) (Immigration and Nationality Act provision for nondisclosure of information "pertaining to the issuance or refusal of visas" so qualifies).

Most important, the policy underlying subsection (B) dictates that Title III be treated as an exempting statute. Subsection (B)'s second prong is intended to reach those statutes in which Congress itself has manifested a determination that certain specified material should remain confidential. *See CNA Fin. Corp. v. Donovan*, 830 F.2d 1132, 1140 (D.C.Cir.1987), *cert. denied*, 485 U.S. 977, 108 S.Ct. 1270, 99 L.Ed.2d 481 (1988); *American Jewish Congress v. Kreps*, 574 F.2d 624, 628–31 (D.C. Cir.1978). In this case, there can be no doubt that Title III's reference to intercepted communications as "matter to be withheld" embodies the requisite legislative judgment as to the advisability of secrecy, stemming from a pronounced congressional concern for the protection of individual privacy. Under these circumstances, subsection (B)'s second prong is properly invoked to support nondisclosure under FOIA Exemption 3.

We reject the suggestion of Mr. Lam that subsection (B) is inapplicable where, as here, a statute identifies matters to be withheld by reference not to their content, but instead to the process by which they are collected. As Mr. Lam notes, Title III exempts from disclosure any kind of information that is electronically intercepted, regardless of its subject matter and solely by virtue of the means by which it is obtained. *See* Reply Brief of Appellant at 8. In this respect, Title III is much like the National Security Act, which has been held to be an Exemption 3 statute under the second prong of subsection (B). *See CIA v. Sims*, 471 U.S. 159, 167–68, 105 S.Ct. 1881, 1886–87, 85 L.Ed.2d 173 (1985). The statutory provision at issue in *Sims*, calling on the Director of the CIA to protect "intelligence sources and methods," also offered a "process" definition of material to be withheld, without limits based on content. Nonetheless, the Supreme Court had no difficulty in concluding that the National Security Act referred to "particular types of matters to be withheld" within the meaning of Exemption 3(B)'s second prong. *See id.*

In light of *Sims,* we can see no reason why Title III should be disqualified as an Exemption 3 statute simply because it defines matters to be withheld on the basis of process. It is true, as Mr. Lam argues, that such process definitions might be so broad as to defeat the "general philosophy of full agency disclosure" which underlies FOIA. *See, e.g.,* S.REP. No. 813, 89th Cong., 1st Sess. 3 (1965).[4] If, for instance, some hypothetical statute specified "materials found in any agency file" as a "type of matter to be withheld," we would undoubtedly find the reference insufficiently particularized to satisfy subsection (B)'s second prong. The process at issue in this case, however—the electronic interception of communications—is a severely restricted one. Identification of matter to be withheld by reference to this process simply does not carry the potential for wholesale agency nondisclosure. *See Medina–Hincapie,* 700 F.2d at 742–43 (second prong of subsection (B) applies absent potential for widespread agency discretion over withholding). Instead, administrative withholding authority remains tightly circumscribed, extending no further than the product of electronic surveillance.[5] That the scope of agency authority is delineated by process rather than by content is in no sense ironic given that it is precisely the process for obtaining information that has occasioned Congress' concern about disclosure.

Thus, we conclude that Title III "refers to particular types of matters to be with-

held" within the meaning of subsection (B)'s second prong. Because subsection (B)'s limiting conditions are phrased in the disjunctive, a statute need satisfy only one of the cited conditions to qualify under Exemption 3, *see Association of Retired R.R. Workers, Inc. v. United States R.R. Retirement Bd.,* 830 F.2d 331, 334 (D.C. Cir.1987); thus, our finding as to the applicability of the second prong of subsection (B) is dispositive of this case. In reaching this result, it is unnecessary for us to decide whether, under FOIA, Title III establishes "particular criteria for withholding" under the first prong of subsection (B).

██ Albeit limited, our holding should *not* be taken to suggest that Title III does not impose constraints on agency use and disclosure of intercepted communications. Section 2517 of Title III permits just three types of disclosure: disclosure by one law enforcement officer to another in the line of official duty, 18 U.S.C. § 2517(1); disclosure by a law enforcement officer "to the extent such use is appropriate to the proper performance of his official duties," 18 U.S.C. § 2517(2); and disclosure by any person while giving testimony under oath, 18 U.S.C. § 2517(3). *See, e.g., United States v. Gerena,* 869 F.2d 82, 84–86 (2d Cir.1989) (use of intercepted communications in trial preparation authorized by section 2517(2)); *American Friends Serv. Comm.,* 720 F.2d at 72–73 (disclosure limited to law enforcement purposes; quoting S.REP. No. 1097, 90th Cong., 2d Sess. 99 (1968)).[6] Thus, we recognize the truth of

---

**4.** The Supreme Court has consistently observed that "[t]he Freedom of Information Act sets forth a policy of broad disclosure of Government documents in order 'to ensure an informed citizenry, vital to the functioning of a democratic society.'" *FBI v. Abramson,* 456 U.S. 615, 621, 102 S.Ct. 2054, 2059, 72 L.Ed.2d 376 (1982) (quoting *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242, 98 S.Ct. 2311, 2327, 57 L.Ed.2d 159 (1978)) (citing *EPA v. Mink,* 410 U.S. 73, 80, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1973)).

**5.** An additional check on agency discretion is provided in this case by the fact that Title III subjects the collection of intercepted communications to judicial control. *See* 18 U.S.C. § 2518. Because the creation of nondisclosable records is strictly monitored by the courts, agen-

cies are without power to expand the class of material covered by Title III's withholding directive. *Cf. American Jewish Congress,* 574 F.2d at 631 (second prong of subsection (B) inapplicable where agency can expand quantity and diversity of nondisclosable information beyond extent originally contemplated by statute).

**6.** Contrary to Mr. Lam's suggestion, the standards established by section 2517 are in no way undermined by the judicial disclosure provisions of section 2518. That a statute provides for release of information at the discretion of a judge is simply irrelevant to analysis under subsection (B). FOIA's concern is with the exercise of unbridled *agency* discretion over document disclosure, and not with judicial discretion. *See GTE Sylvania, Inc. v. Consumers Union of the United States,* 445 U.S. 375, 385–86, 100 S.Ct.

the DEA's argument that its authority to withhold and disclose intercepted communications is closely regulated by section 2517. In light of our holding today, however, we find it unnecessary to decide whether the foregoing criteria is "particularized" enough to meet the first prong of subsection (B).

### C. *In Camera Review*

■ Finally, we reach Mr. Lam's contention that the District Court erred by declining to conduct an *in camera* inspection of documents withheld by the DEA pursuant to various FOIA exemptions. According to Mr. Lam, the DEA's index of withheld material was inadequate, necessitating *in camera* review to evaluate properly the validity of DEA claims under FOIA Exemptions 2, 5 and 7. *See* Brief of Appellant at 35–40. We find Mr. Lam's argument to be without merit.

■ Section 552(a) of the FOIA, 5 U.S.C. § 552(a)(4)(B), permits but does not require *in camera* review of withheld documents. The decision whether to perform *in camera* inspection is left to the "broad discretion of the trial court judge." *See Carter v. Department of Commerce*, 830 F.2d 388, 392 (D.C.Cir.1987). *In camera* inspection may be appropriate in two circumstances: when agency affidavits are insufficiently detailed to permit meaningful review of exemption claims, and when evidence of agency bad faith is before the court. *See id.* at 392–93. Mr. Lam bases his claim to *in camera* review entirely on the first of these factors, citing the purported inadequacy of the DEA's index and affidavits.

The index submitted by the DEA in this case consisted of a separate document for each page withheld or excised, describing the type of record withheld, the nature of the information withheld and the exemption claimed. *See* App. 158–66; *cf. King v. Department of Justice*, 830 F.2d 210, 219–28 (D.C.Cir.1987) (index inadequate where it relies on coding system rather than separate page descriptions of each withheld document). According to Mr. Lam himself, the index submitted by the DEA consisted of approximately 1,000 pages. *See* Brief of Appellant at 4.

After considering Mr. Lam's objections, the District Court ruled the DEA index and accompanying affidavits sufficient and *in camera* review unnecessary:

> [i]n sum, DEA has compiled an indexed itemization which sets forth a description of every page of relevant DEA documents requested by plaintiff either withheld or excised pursuant to its exemption claims. The affidavits of [DEA] also provide a specific narrative description of the creation of these documents and set[ ] forth specific reasons for the invocation of each exemption. DEA's itemization, with accompanying affidavits, clearly meets the summary judgment standard and an *in camera* inspection of these documents is therefore unnecessary.

*Lam,* mem. op. at 6 (citation omitted), *reprinted in* App. 126. We find nothing in the record to suggest that the District Court abused its discretion, and we will not disturb its ruling on review.

### III. CONCLUSION

We affirm the District Court judgment in its entirety. Title III is an exempting statute under FOIA Exemption 3 because it "refers to particular types of matters to be withheld" within the meaning of Exemption 3(B)'s second prong. Therefore, the District Court properly held the transcripts of intercepted communications sought by Mr. Lam protected from disclosure under FOIA Exemption 3. The District Court

---

1194, 1201, 63 L.Ed.2d 467 (1980). Statutory provisions subjecting disclosure to judicial approval do not allow for discretionary administrative decisionmaking, and are thus covered by Exemption 3(A) as dictating withholding "in such a manner as to leave no discretion on the issue." *See Fund for Constitutional Gov't v. National Archives and Records Serv.,* 656 F.2d 856,

868 (D.C.Cir.1981) ("Any disclosure to persons outside of the government may only be made pursuant to a court order [under Rule 6(e) of the Federal Rules of Criminal Procedure]. Therefore, the rule's ban on disclosure is for FOIA purposes absolute and falls within subpart (A) of Exemption 3.").

also acted well within its discretion in sustaining the DEA's other claims to exemption without conducting *in camera* review of the withheld documents. Accordingly, the District Court grant of summary judgment for the DEA is affirmed.

*So ordered.*