# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued February 8, 2008          Decided March 4, 2008

No. 07-5064

SILVIA PATRICIA MIRANDA JUAREZ,
APPELLANT

v.

DEPARTMENT OF JUSTICE, DRUG ENFORCEMENT
ADMINISTRATION,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 04cv01468)

---

*Peter Kryn Dykema* argued the cause and filed the briefs for appellant.

*Brentin V. Evitt*, Senior Counsel, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Jeffrey A. Taylor*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: SENTELLE, *Chief Judge*, and GRIFFITH and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* SENTELLE.

SENTELLE, *Chief Judge*:  Silvia Miranda Juarez appeals from the district court's entry of summary judgment upholding the Drug Enforcement Administration's denial of her Freedom of Information Act (FOIA) request.  She argues that the agency's affidavits and underlying explanations were insufficient to justify withholding the records she requested under FOIA's Exemption 7(A), which protects records and information compiled for law enforcement purposes. Alternatively, she urges that the district court erred by failing to conduct a segregability analysis for the withheld documents. For the following reasons, we reject appellant's arguments and affirm the judgment of the district court.

## I.  Background

Appellant Silvia Miranda Juarez ("Miranda") is a Mexican citizen who lived in the United States with her husband and two sons from 1994 to 2002 on a series of business-related, limited-term visas.  Miranda and her husband together own two businesses in this country: America Transfers, Inc. and Mexico Transfers, Inc.  Both businesses provide money transfer services primarily to workers remitting funds to relatives in Latin America.  Together, these companies operate 119 branch offices in fifteen states.

Under the conditions of her visa, Miranda was required to leave the United States and file for an extension at an American consular office abroad.  Miranda traveled to Monterrey, Mexico for this purpose in July 2002, but her visa renewal application was rejected by the United States Consulate there.  A consular official told Miranda that her application was denied because she was under investigation for money laundering and that she was therefore ineligible for reentry into the United States.

Miranda initially asserted that this was a case of mistaken identity and submitted a FOIA request to DEA for records of any investigation relating to her. DEA conducted a search of its investigative filing systems for responsive records and found one fourteen-page investigative record confirming Miranda was the subject of a DEA criminal law enforcement investigation. Later, DEA found two additional pages of records, bringing the total to sixteen pages. Citing FOIA Exemptions 2, 3, 7(A), 7(C), 7(D), and 7(F), 5 U.S.C. § 552(b)(2), (3), (7), DEA withheld the documents in their entirety from Miranda. Miranda appealed this denial administratively to the DOJ's Office of Information and Privacy, but that office affirmed DEA's decision.

Miranda commenced the current action on August 27, 2004, seeking judicial review of DEA's decision to withhold the information she requested. DEA moved for summary judgment on December 1, 2004, arguing that because there was an ongoing criminal investigation, it had properly withheld the requested information from Miranda. During the following seventeen months, Miranda and DEA delayed this action while the parties engaged in discussions over Miranda's willingness to cooperate in the ongoing investigation. While DEA agents at one point met with Miranda, they did not question her but only offered to listen to any information she could provide them. After DEA showed no further interest in Miranda's participation in their investigation, Miranda filed her memorandum in opposition to DEA's motion for summary judgment on May 19, 2006.

On December 13, 2006, the district court granted DEA's motion and entered summary judgment in its favor. As the district court noted in its memorandum opinion accompanying the summary judgment order, Miranda had asserted only one alleged issue of material fact in opposition to DEA's motion. Specifically, she argued that DEA had wrongfully denied her

FOIA request because there was no *ongoing* criminal investigation to justify the use of Exemption 7(A). The district court ruled that the affidavits tendered by DEA in support of its motion for summary judgment confirmed the existence of an active investigation of Miranda and of potential adverse consequences that would flow from the release of further information – including a more specific description of the documents' contents. As Miranda was unable to produce any contravening evidence, the district court granted DEA summary judgment.

Miranda raises three issues in this appeal. We consider each in turn.

## II. Propriety of Summary Judgment

Miranda first claims that the district court's entry of summary judgment was improper because DEA failed to establish that FOIA Exemption 7(A) applied. That exemption protects from mandatory disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). This Court has further interpreted § 552(b)(7)(A) to require a law enforcement agency invoking the exception to show that the material withheld "relates to a concrete prospective law enforcement proceeding." *Bevis v. Dep't of State*, 801 F.2d 1386, 1389 (D.C. Cir. 1986) (quoting *Carson v. U.S. Dep't of Justice*, 631 F.2d 1008, 1018 (D.C. Cir. 1980) (internal quotation marks omitted)).

We review a district court's grant of summary judgment *de novo*. *Assassination Archives & Research Ctr. v. CIA*, 334 F.3d 55, 57 (D.C. Cir. 2003). A district court may grant summary

judgment to a government agency claiming Exemption 7 when "the agency affidavits describe the documents withheld and the justifications for nondisclosure in enough detail and with sufficient specificity to demonstrate that material withheld is logically within the domain of the exemption claimed." *King v. U.S. Dep't of Justice,* 830 F.2d 210, 217 (D.C. Cir. 1987); *see also PHE, Inc. v. Dep't of Justice*, 983 F.2d 248, 250 (D.C. Cir. 1993).

We are satisfied that DEA provided affidavits sufficient to meet these requirements. DEA describes the withheld documents with reasonable specificity: its affidavits state that the documents are, with one exception, DEA Form 6s, the forms the agency uses to record investigative information it has developed pursuant to its mission to enforce the controlled substances laws of the United States and related criminal statutes. The affidavits confirm that DEA's investigation of Miranda remains ongoing. Further, the affidavits assert that the release of any portion of the withheld documents would compromise the investigation as it could lead to destruction of evidence and disclosure of potential witnesses' identities as well as DEA's investigative techniques. The affidavits disclose that at least one document contains one confidential source's name and, even if that name were redacted, the details contained in the remaining information could reveal that source's identity and possibly another informant's as well.

We find unpersuasive appellant's contention that DEA's claim of Exemption 7(A) should be rejected because DEA has failed to establish a "plausible basis" for its investigation. Miranda makes a rather curious argument that because her money-transfer businesses face a high degree of government scrutiny on a routine basis, that this should effectively inoculate her from suspicion for money laundering. She makes this argument despite the fact that her businesses transfer money

principally to countries from which most illicit drugs flow into the United States.  We note that to accept appellant's argument on this point is to conclude that the enterprises most capable of violating the money laundering statutes would be the least suspect of committing such violations.  The same reasoning would compel one to conclude that regulated securities exchange dealers would be unlikely to violate the securities laws and registered firearms dealers would be unlikely to violate the firearms laws.  We can hardly say that the district court erred by failing to credit such an argument.

We also reject Miranda's contention that DEA failed to establish by its affidavits that a law enforcement investigation was ongoing or leading to a concrete enforcement action.  Miranda cites the DEA's failure to follow up with her requests to cooperate as evidence from which the district court should have inferred that DEA was no longer actively pursuing its investigation.  While it is true that Exemption 7(A) cannot justify withholding material unless it relates to a "concrete prospective law enforcement proceeding," *see NLRB v. Robbins Tire & Rubber* Co., 437 U.S. 214, 232 (1978), this is not quite the formidable hurdle appellant would make it out to be.  As the Supreme Court explained in *Robbins Tire & Rubber Co.* regarding the genesis of this "concrete" requirement:

> The tenor of [Congressional testimony on Exemption 7's] statutory language clearly suggests that the release of information in investigatory files prior to the completion of an actual, contemplated enforcement proceeding was precisely the kind of interference that Congress continued to want to protect against.  Indeed, Senator Hart stated specifically that Exemption 7(A) would apply "whenever the Government's case in court—*a concrete prospective law enforcement proceeding*—would be harmed by the premature release of evidence or information . . . ."

*Id.* (emphasis added). Thus, so long as the investigation continues to gather evidence for a possible future criminal case, and that case would be jeopardized by the premature release of that evidence, Exemption 7(A) applies. The DEA's affidavits here informed the district court that the criminal investigation remained ongoing, and from that the district court could reasonably infer that this investigation may eventually lead to a prosecution. Further, the only inference one must necessarily draw from DEA's lack of continued contact with Miranda is that it does not desire her participation in its investigation—it does not necessarily undermine DEA's claim that the investigation remains ongoing.

Appellant has argued repeatedly before both the district court and this court that the DEA's lack of interest in interviewing her despite her repeated expressions of willingness to engage an interview should be taken as evidence that no investigation is ongoing. That argument is a non sequitur. While in many investigations the cooperation of the subject is obviously desirable, in many others such an interview would be the last technique an investigative agency would wish to employ. The very nature of the questions asked by an investigating agent would tell a knowledgeable subject the direction in which the investigation was going and provide strong clues as to the evidence it had in hand. The predicates of questions asked might indeed provide a subject with the ability to make well-educated guesses as to the nature of cooperating individuals and other sources. Thus, the lack of desire on the DEA's part to interview Miranda is no evidence that she is not the subject of an ongoing investigation.

### III. *In Camera* Review

Miranda next claims that the district court abused its discretion by failing to conduct an *in camera* review of the requested documents. It is true that FOIA provides district courts the option to conduct *in camera* review, 5 U.S.C. § 552(a)(4)(B), but it by no means compels the exercise of that option. *See Robbins Tire & Rubber Co.*, 437 U.S. at 224; *PHE*, 983 F.2d at 252–53. We review a district court's decision whether to conduct *in camera* review of FOIA documents for abuse of discretion, *Horowitz v. Peace Corps*, 428 F.3d 271, 282 (D.C. Cir. 2005), and we have provided guidance on the exercise of that discretion, *see Allen v. CIA*, 636 F.2d 1287, 1298–99 (D.C. Cir. 1980), overruled on other grounds by *Founding Church of Scientology of Washington D.C., Inc. v. Smith*, 721 F.2d 828 (D.C. Cir. 1983).

In this case, due to the minimal length of the documents involved, we agree with appellant that the district court would not have abused its discretion had it chosen to review the documents *in camera*. *See id.* at 1299 (observing that an *in camera* review of a fifteen-page document would have offered the district court an efficient technique for conducting its *de novo* review). But that does not in itself compel a conclusion that the district court's decision not to conduct an *in camera* review constituted an abuse of its discretion. If a district court believes that *in camera* inspection is unnecessary "to make a responsible de novo determination on the claims of exemption," *Carter v. Dep't of Commerce*, 830 F.2d 388, 392 (D.C. Cir. 1987) (quoting *Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978)), it acts within its "broad discretion" by declining to conduct such a review, *id.*

Nor was the district court's omission in its memorandum opinion of any specific discussion of Miranda's request that it

conduct an *in camera* review of the withheld documents in error. When a district court finds that a law enforcement agency's affidavits sufficiently describe the documents and set forth proper reasons for invoking an exemption, *in camera* inspection of those documents is unnecessary. *See Lam Lek Chong v. U.S. Drug Enforcement Admin.*, 929 F.2d 729, 735 (D.C. Cir. 1991). Because the district court here was satisfied that DEA's affidavits properly placed the withheld documents within the scope of Exemption 7(A), it did not need to reach the question of *in camera* review in its opinion.

## IV.  Segregability

Miranda's final claim is that the district court erred by failing to make a segregability finding.  We recently reiterated that the district court both has "an affirmative duty to consider the segregability issue *sua sponte*" and that it errs when it "approves the government's withholding of information under the FOIA without making an express finding on segregability." *Morley v. CIA*, 508 F.3d 1108, 1123 (D.C. Cir. 2007) (internal quotations and citations omitted).

Under this Circuit's law, the district court's failure to address segregability in its memorandum opinion is reversible error.  *Id.*  Nevertheless, in this instance we need not prolong the case further by remanding it solely for this purpose.  We recall that our review of summary judgment is *de novo*.  "[O]ur task [is] precisely the same as the district court's" when "the decision under review [is] a final determination by the district court as to the legal sufficiency of [an] agency's determination to disclose contested information." *Occidental Petroleum Corp. v. SEC*, 873 F.2d 325, 340 (D.C. Cir. 1989).  As we have the same record before us as did the district court, we are just as capable of evaluating the DEA's affidavits regarding segregability as is the court below.  We conclude that no part of the requested

documents was improperly withheld.

The FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). This Circuit has long recognized, however, that documents may be withheld in their entirety when non-exempt portions "are inextricably intertwined with exempt portions." *Mead Data Central, Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). A court may rely on government affidavits that show with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated for this reason. *Armstrong v. Executive Office of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996).

Here, DEA provided sufficient information in its affidavits to allow a court to affirm withholding of the documents *in toto*. DEA stated that it had conducted a page-by-page review of all investigative records contained in the requested documents, and determined that each document, and each page of each document, contained information subject to law enforcement withholding exemptions. It justified its inability to simply redact sensitive portions (i.e., informant names) from these documents by pointing out that the balance of information remaining in the documents could still reveal the extent of the government's investigation, the acts on which it is focused, what evidence of wrongdoing it is aware of, the identity of cooperating sources, and the agency's investigative techniques in this investigation. The affidavits further attested that release of any of this information could jeopardize the investigation. For these reasons we are satisfied that no portions of the withheld documents may be segregated and released to appellant.

## V. Conclusion

For the reasons discussed above, we affirm the district court's judgment.